(No. 29987.—

RAYMOND PREWITT *et al.,* Appellants, *vs.* ANNA PREWITT, Appellee.

*Opinion filed May 22, 1947.*

POWLESS & WINTERS, of Marion, for appellants.

CHARLES C. MURRAH, of Herrin, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants filed a complaint in the circuit court of Williamson county seeking cancellation of a certain deed purporting to be executed by one Dolph Prewitt and his wife Anna, to themselves in joint tenancy and not as tenants in common. It appears from the record that this property was deeded to Dolph Prewitt and his then wife, Florence, in joint tenancy, on May 25, 1937; that Florence Prewitt died April 10, 1940, thus vesting the entire property in her husband, Dolph Prewitt, who later married the defendant, Anna Prewitt, and on February 18, 1944, the purported deed is said to have been executed. Dolph Prewitt departed this life intestate on January 14, 1946, and subsequently the plaintiffs, appellants, Raymond Prewitt, a son by Prewitt's first marriage, and three children of a deceased son of Dolph Prewitt by his first marriage, started this action to set aside the deed of February 18, 1944. They claim that Anna Prewitt is not the lawful wife of Dolph Prewitt and that the complainants, as heirs of Dolph Prewitt, are the owners in fee simple of the property, free of any right of Anna Prewitt. They also claim that the deed of February 18, 1944, was a forgery and should be set aside. The complaint also prayed for general relief.

The chancellor found that the evidence did not sustain the allegation that the defendant, Anna Prewitt, was not the lawful wife of Dolph Prewitt, and, as we are convinced that that conclusion is right, it is unnecessary to further consider that point. The record is devoid of any

positive evidence that Ed Craig, former husband of Anna Prewitt, was not properly made party to her divorce proceeding against him. In case of a collateral attack on a judgment or decree, all presumptions are in favor of the validity of the judgment or decree attacked, and want of jurisdiction to enter the same must appear on the face of the record to furnish a basis for collateral attack. Such cannot be shown *aliunde*. (*Cullen* v. *Stevens*, 389 Ill. 35; *People ex rel. Stuckart* v. *Culver*, 281 Ill. 401; *People ex rel. McCall* v. *Martin*, 243 Ill. 284.) The only evidence of want of jurisdiction of Ed Craig, former husband of Anna Prewitt, was his testimony in which he said he did not think that the signature on the entry of appearance in the divorce proceeding was his. This was not sufficient.

It is also contended by plaintiffs that the deed of February 18, 1944, is a forgery and so invalid. This deed on its face purported to be executed by Dolph Prewitt, by his mark, and by Anna Prewitt. The grantees were described as "Dolph Prewitt and Anna Prewitt, His Wife, as joint tenants and not as tenants in common." Anna Prewitt testified that she signed the name of Dolph Prewitt to his mark at his direction. The deed is purported to have been acknowledged by Dolph and Anna Prewitt on February 18 before Maggie Garavalia Vallero, a notary public of Williamson county, referred to by witnesses as Maggie Garavalia.

Plaintiffs, in support of their attack upon the validity of the deed purported to have been signed by Dolph Prewitt by a cross, offered the evidence of six witnesses.

Raymond Prewitt, one of the plaintiffs, testified that his father, Dolph Prewitt, died January 14, 1946. The deed attacked was dated February 18, 1944. Raymond Prewitt testified that all his life he had had occasion to observe his father sign his name and that he would write it out, "Dolph Prewitt," just as anyone else would.

A witness, J. P. Adams, testified that he was in the insurance business; had been for several years and knew Dolph Prewitt and his former wife, Florence Prewitt; that he had seen Dolph Prewitt sign his name in applications for automobile licenses and driver's licenses; that he had never seen him sign with an "X" but that he always wrote his name out and that the witness never saw him sign by a mark; that he had seen him sign his name in various transactions over a period of possibly ten years and had seen him sign his name as late as 1945, within a year before his death.

Myrtle Prewitt, wife of Raymond Prewitt, one of the plaintiffs, testified that one morning about eight o'clock, not long after Dolph Prewitt died, she was at the home of Mary Prewitt, where she had gone to have her "hair fixed," and was in the bedroom at Mary Prewitt's home when Anna Prewitt, the defendant, arrived in a cab; that Anna Prewitt and Mary Prewitt were in the room next to the one in which the witness was seated; that the door was open between them and she heard a conversation between Mary Prewitt and Anna Prewitt; that Anna Prewitt said that Maggie Garavalia and Charles Murrah had been to her house and got her out of bed; that Maggie was scared over signing a deed that wasn't going to hold up; that it was no good. She testified that Anna Prewitt told her that she was going to try to get a good deed made for $600; that Mary asked her what was the matter with the deed and she said it had been signed by an "X" mark in pencil and that Maggie Garavalia had traced it in ink and she said that Maggie said if it didn't hold up she would have to give her money back for making the deed; that she had left the deed for Mr. Murrah to straighten out and make a good deed out of the two; that Mary asked Anna why she didn't go to Raymond to get this straightened up and she said her lawyer told her to keep

away from Raymond. On cross-examination she was asked when that conversation occurred, and she said she thought it was in April. Upon being pressed by counsel as to whether it was April, 1945, she said she was guessing but she thought it was. She had also stated that the conversation occurred after the death of Dolph Prewitt. As Dolph Prewitt died in February, 1946, it is evident that this witness had in mind April, 1946.

Mary Prewitt, widow of Lowell Prewitt, and a sister-in-law of Raymond Prewitt, testified that she recalled the day when Anna Prewitt came to her house and that it was on Saturday, She was not able to give a more definite time; that there was present, aside from herself and Anna Prewitt, her own daughter, Evorah, age 14. Mrs. Raymon Prewitt was in the bedroom and did not come in while Anna was present. The witness testified that she asked Anna why she was out so early, because they had not had breakfast, and she said Charlie Murrah had come out and gotten her out of bed; that she had two deeds and he was to fix her up a clear deed out of the two for $600. She said she had signed the deed with an "X" and that Dolph Prewitt knew nothing about it. The witness stated that she had asked Anna why she and Raymond did not get together and make some agreement, and she replied that her lawyer told her to keep away from him, Raymond.

Raymond Prewitt, recalled as a witness, identified two withholding exemption certificates which were introduced into evidence. He testified that the signatures "Dolph Prewitt" to these instruments were executed by his father.

One Frank L. Felts testified that he was water superintendent in Herrin; had known Dolph Prewitt about 25 years; that he had been chief clerk of the coal mine where Dolph Prewitt was employed and had seen him sign his name possibly a hundred times; that he always wrote out his name and had never known him to use an "X" mark.

He testified that the signatures to the withholding certificates were both signed by Dolph Prewitt.

Evorah Prewitt, daughter of Mary Prewitt, testified to Anna's coming to their house sometime after her grandfather's death, though not very long; that her aunt, Mrs. Raymond Prewitt, was in the bedroom; that Anna Prewitt said she had two deeds and that her lawyer was going to make one of those deeds good. She testified Anna Prewitt stated she had signed a deed and put an "X" on it and that Mrs. Garavalia had had her sign it, to put the signature over that in ink; that Maggie Garavalia had said she didn't want to have anything to do with it if it was going to cause her any trouble and she would give her back the money for making the deed. She further testified that Anna Prewitt said she signed Dolph Prewitt's name to the deed. The witness also testified that her mother asked Anna Prewitt if she didn't know she couldn't sell anything out of court like that and why didn't she and Raymond get together and work it out and she said her lawyer told her not to go around Raymond Prewitt. Anna stated before she left that she thought Mr. Murrah was trying to make her do something she wasn't supposed to do; that she would go back and get those deeds, that she knew just where they were and would call later.

Raymond Prewitt recalled, further testified that his father, up to the time of his death, had been in good health and was always able to sign his own name and that the witness knew of no reason why he wouldn't sign his name as he always did.

Anna Prewitt, the defendant, denied the conversation between herself and Myrtle Prewitt. She stated that she was not at the house on the occasion testified to by these witnesses and had never made any such statement. She testified that she had signed the deed under attack here; that Maggie Garavalia prepared the deed, wrote it out on the typewriter in her office; that both she and Dolph

Prewitt were there; that he signed his mark for his name; that he told her he could not read or write; that she had done all his writing and reading for him after they were married. She testified both that Dolph Prewitt had made the "X" and also that he had requested her to make it and requested her to sign his name, all in the office of Maggie Garavalia. She stated on cross-examination that she had never been at the home of Mary Prewitt after the death of Dolph Prewitt; that the deed had been signed by her and Dolph Prewitt in Maggie Garavalia's office; that there were two foreigners there who signed it also. She thought it was that deed, at any rate it was some papers they signed as witnesses; that Miss Garavalia fixed it all out so that it would be fixed when she got home; that Nora Bradford had signed her name as witness to the deed but she erased her name off the deed a day or two afterwards. When asked whether the signing was done all at one time, at Maggie Garavalia's office, she testified "right in my kitchen;" that Dolph's name was signed in her kitchen and that she had made all of the writing except the "X" and it was all done in her kitchen; that Dolph Prewitt had signed it there. She also testified that Maggie Garavalia, the notary public, had fixed everything up before leaving her office so that "she went home and fixed it all out there."

Nora Bradford testified that in the kitchen at the Prewitt home, Dolph Prewitt and Anna Prewitt were there; that she did not see anyone else there; that Anna Prewitt signed her name and her husband's name to the deed and Dolph Prewitt made an "X;" that she then had signed her name to that deed but she thought it was a mistake and was sorry and later rubbed it off. On cross-examination she stated that she had made a mistake in putting her name on the deed and that she was there as a witness to tell that she had make a mistake; that for a good while she had been a friend and neighbor to Anna

Prewitt and through mistake she put her name on. There is no evidence that Maggie Garavalia was present in the kitchen at the time this deed was signed as testified to by Anna Prewitt. This constitutes the entire evidence regarding the signing of the deed by an "X" by Dolph Prewitt.

Defendant's counsel cites *Gritten* v. *Dickerson*, 202 Ill. 372, in support of their claim that the testimony in this case does not overcome the notary's certificate as to the execution of the deed. That case held that proof that the alleged grantor could write his name, while certain evidence showed also that he had in many instances made his mark instead of writing his name, does not overcome the notarial certificate. The rule is there laid down that evidence to impeach a certificate must be clear and convincing and should do more than produce a mere preponderance against the integrity of the certificate.

In the case before us, if the witnesses for plaintiffs are to be believed, Dolph Prewitt had never been known, either previously or subsequently to the purported execution of this deed, to sign his name by mark. All the evidence, except the unsupported evidence of the defendant, shows that he could and did sign his name in all other business transactions, both before and after the deed was purported to have been executed. While the testimony of the women of the Prewitt family is denied by the defendant, it is not otherwise impeached and bears strong evidence that after the death of Dolph Prewitt the defendant was much agitated for fear that the deed would not "hold up." The inconsistency also in the testimony of the defendant, Anna Prewitt, lends much credence to the statements of plaintiffs' witnesses. She stated in the first place that both she and Prewitt had signed the deed in the office of the notary public and that two "foreigners" had signed as witnesses to some sort of paper about the deed. On cross-examination she testified that "Miss Garavalia fixed it all out so that it would be fixed when I got home." Her tes-

timony is that the notary fixed it up for signing in her office and that the parties afterwards signed it in the kitchen of the Prewitt home; that Dolph Prewitt did not sign the deed in Garavalia's office but both signed it in her home. If she is telling the truth about this, the deed was prepared, including the certificate of the notary, in the notary's office, and was later taken home by Anna Prewitt and executed there by Dolph Prewitt and herself. The substance of this proof is that at the time the notarial certificate was attached, no one had signed the deed. There is no evidence that the notary was present in the kitchen at the Prewitt home on the evening that, as defendant testifies, the deed was signed, though the acknowledgment bears the same date as the deed. These facts cast doubt upon the validity of the deed itself. (*Hess* v. *Hodges,* 201 *Ala.* 309, 78 So. 85; *Winkelstein* v. *Roberts,* (Tex. Civ. App.) 220 S.W. 401.) This, with the positive testimony that Dolph Prewitt always signed his name and never used an "X," and the contradictory statements of Anna Prewitt as to the manner of the execution of the deed and the notarial certificate, indicates most strongly that the finding of the chancellor confirming the deed was contrary to the manifest weight of the evidence. We are of the opinion that the proof shows that the purported deed here is not a valid conveyance.

In view of our holding that the plaintiffs' proof did not establish that Anna Prewitt was not the lawful wife of Dolph Prewitt, the situation as to the rights of the parties in this case is as follows: By reason of the death of Florence Prewitt, the former wife of Dolph Prewitt, he became vested with the entire fee to the property. Anna Prewitt, the defendant here, as his widow, is entitled to her statutory rights as widow. Moreover, if the deed attacked here be valid, it could not have had the effect of transferring title to Dolph Prewitt and Anna Prewitt as joint tenants and not as tenants in common. (*Deslauriers* v. *Senesac,* 331

Ill. 437; *Gaunt* v. *Stevens*, 241 Ill. 542.) Dolph Prewitt could not, in his lifetime, by making a deed joined in by Anna Prewitt, transfer to them as joint tenants, but the effect of such a deed would have been to create a tenancy in common. (*Deslauriers* v. *Senesac*, 331 Ill. 437.) Since the deed is shown by the testimony to be invalid, the only interest Anna Prewitt has in the property is, as we have stated, that of a widow.

The decree of the circuit court of Williamson county is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*