Lillian Anderson, Plaintiff-Appellee, v. Arthur R. Anderson, Defendant-Appellant.

**Gen. No. 10,759.**

Second District.

February 7, 1955.

Released for publication February 24, 1955.

Murphy, Murphy, French and Murphy, of Chicago, for appellant; David J. Murphy, and Jerome T. Murphy, both of Chicago, of counsel.

Paulson & Jordon, of Elgin, for appellee.

MR. JUSTICE CROW delivered the opinion of the court.

On June 8, 1951, a decree of divorce upon the grounds of desertion was entered herein on the complaint of Lillian R. Anderson, plaintiff-appellee, hereinafter referred to as the plaintiff, against Arthur R. Anderson, defendant-appellant, hereinafter referred to as the defendant. On March 13, 1953 the defendant filed a veri-

fied "petition in the nature of a writ of error, coram nobis, to vacate and set aside decree for divorce and for leave of defendant to file a counterclaim for divorce and for the care, custody, and control of minor child." The plaintiff filed a verified answer to that petition. On November 6, 1953, the defendant filed a verified "amended petition of defendant to vacate decree, etc." On January 8, 1954, after a hearing on the defendant's petition, as amended, and the answer, the trial court entered an order finding that the defendant had failed to sustain the petition and that it should be denied and, accordingly, denied and dismissed the defendant's petition. From that order the defendant has appealed.

The defendant's theory is that the plaintiff at the time of the decree, June 8, 1951, had not "resided in the State one whole year next before filing . . . her complaint" (ch. 40, Ill. Rev. Stats. 1953, par. 3 [Jones Ill. Stats. Ann. 109.170]), the proceedings were not "had in the County where the plaintiff or defendant resides" (ch. 40, Ill. Rev. Stats. 1953, par. 6 [Jones Ill. Stats. Ann. 109.173]), the court therefore had no jurisdiction, "fraud, perjury, and deceit" were committed by the plaintiff on the court and defendant, and "duress and undue influence" were perpetrated by the plaintiff on the defendant.

The original complaint of the plaintiff in the divorce case, filed June 8, 1951, the same date as the original hearing and decree, alleges, in effect, so far as material, that "she is an actual resident of the County of Kane and State of Illinois, and has been a resident of the State of Illinois for more than one year last past continuously and immediately preceding the filing of the complaint"; the plaintiff and defendant were married August 24, 1937; they have no children of their own but have one adopted child, a boy, born June 14, 1945, who is in the custody of the plaintiff; plaintiff has at all times conducted herself as a kind, true, faithful, and

333

affectionate wife; defendant has, without any reasonable or just cause, on or about March 15, 1950, deserted and absented himself from the plaintiff and has persisted in such desertion until the present time; the parties have no property except household furniture and an automobile, title to both being in both names; defendant is a chaplain in the United States Navy, earning about $400 per month, and able to support the plaintiff and the child. The complaint prays for a divorce, the award of custody of the child to the plaintiff, support for the plaintiff and the child, solicitor's fees, costs, the award of the household furniture to the plaintiff, and general relief.

On the same date, the defendant's appearance was filed, signed by him, waiving service of summons, consenting to the jurisdiction of the court, and consenting to an immediate hearing at any time without notice to him. The appearance was acknowledged and notarized the same date, reciting that the defendant had that day in person appeared before the notary and acknowledged that he signed the appearance as his free and voluntary act for the uses and purposes therein set forth.

On the same date, the defendant's answer was filed, signed by him, admitting the allegations of the complaint as to the parties' marriage and as to the adopted child, and denying all other allegations of the complaint, denying the plaintiff is entitled to the relief prayed, and praying that the complaint be dismissed. No attorney's name appears thereon as attorney for the defendant.

The decree of divorce, so far as material, recites that the cause came on to be heard on the complaint, the answer, and appearance, and the evidence adduced, and finds that the court "has jurisdiction of both the subject matter and of the parties to this cause, and that the equities of said cause are with the plaintiff"; that "the

334

plaintiff and the defendant are residents of the City of Elgin, County of Kane, and State of Illinois, and have been such residents for more than one year prior to the filing of the complaint"; the parties were married (as alleged in the complaint); they have one adopted child, etc. (as alleged in the complaint); the plaintiff has at all times conducted herself as a kind, etc., wife (as alleged in the complaint); the defendant, without any reasonable or just cause therefor, did on or about March 15, 1950 desert and absent himself from the plaintiff, etc. (as alleged in the complaint); that a property settlement has been entered into between the parties, which is satisfactory to each, is reasonable, and is approved; the defendant is a chaplain, etc., has certain earnings, is able to support plaintiff and the child, and that the child is physically incapacitated and requires medical attention, etc.; and the plaintiff is a fit and proper person to have the custody of the child. The decree then divorces the parties; awards custody of the child to the plaintiff "with the right to the said defendant to see said child at all reasonable times and places"; orders the defendant to pay plaintiff $100 per month alimony for her support, and $125 per month child support, totalling $225; and orders the defendant to pay the plaintiff $150 for her attorney's fees, costs, and suit money.

The defendant's verified petition, filed March 13, 1953, in the nature of a writ of error, coram nobis, to vacate and set aside decree for divorce, etc., alleges, in effect, so far as material, that he is a Lt. Comdr., Chaplain Corps, United States Navy, stationed at U. S. Naval Station, Great Lakes, Illinois; a decree of divorce was entered June 8, 1951; that on March 15, 1950 and for over a period of a year the defendant and plaintiff lived and cohabited in Flushing, N. Y.; that he was never separated from her because of his fault at any time since marriage except on Navy duties and then for never more than 3 weeks' periods while at sea; he main-

tained an apartment for self and family at Hunter Gardens, Flushing, Long Island, N. Y., from January 1, 1950 to March 30, 1951; the plaintiff's only corroborating witness, Lillian Strohm, her mother, lived with defendant and plaintiff at that apartment in the fall of 1950 for several weeks; he called at the office of the plaintiff's attorney, in Elgin, upon the plaintiff's invitation, signed some papers, but did not understand that one was an appearance and waiver of service of summons and consent to the immediate hearing of said cause, and he was never sworn by any notary on the acknowledgment attached to the appearance; he also discovered subsequently that he had signed an answer which was filed June 8, 1951; he never at any time saw a copy of the complaint and did not know the allegations thereof until they were examined by his attorneys; when he went to the plaintiff's attorney's office he was unaware of plaintiff's plans, did not question same until they entered the office, defendant then realized he was "tricked" into going there, then realized for the first time that plaintiff had in mind divorce proceedings, his grief and shock so overwhelmed him he did not have free use of his faculties, he felt he did not care what happened, did not understand what was happening; and if he executed any documents, he did not realize the significance of same; plaintiff had certain personal property of defendant and he had gone to Elgin to obtain it and make arrangements for a new apartment near Chicago when he discovered plaintiff's foregoing plans; he can corroborate his allegations by disinterested witnesses and documentary evidence to prove "there was never asserted any statutory grounds for desertion." The petition then prays the decree be vacated, the custody of the child be given defendant, leave be given him to counterclaim for divorce, plaintiff be required to answer his counterclaim, the cause be set for immediate hearing, and for general relief.

336

The plaintiff's verified answer to defendant's petition to vacate alleges, in effect, in substance, so far as material, that defendant is a chaplain, U. S. Navy; admits the decree; admits she testified at the divorce hearing that she had resided in Elgin, Illinois all her life and says such statement and all her other testimony is true; says defendant was guilty of cruel and unhuman conduct toward her but such was not mentioned in the proceedings because defendant is a minister and she did not wish to harm him; admits that during times when defendant was stationed outside of Illinois he maintained accommodations convenient to him in his employment; denies defendant's allegations as to his execution of the appearance, etc., and says any documents signed by him were read by and thoroughly understood by him; says the answer was read and understood by defendant at the time it was signed; denies defendant's allegations as to not seeing a copy of the complaint, and says a copy was submitted to him before the filing of the case; denies defendant's allegations as to the circumstances of his visiting her attorney's office, etc., and says she had told defendant she would not submit to indignities and cruelty suffered, insisted upon a divorce and custody of the child, negotiations went on for many weeks before filing the case, on his persuasion she agreed not to mention cruelty and other grounds which defendant said would cause him to lose his position in the Navy and ministry, defendant's primary concern was as to the effect of a divorce on his position and profession, and all documents he signed were read by, explained to, and fully understood by him; says there had been discord for years and divorce had been discussed many times; denies defendant can corroborate his allegations; says the real purpose of defendant's petition is to secure a reduction in support payments so he may marry someone to whom plaintiff is informed he is engaged; says the amount of support

337

was the result of conferences and agreement with defendant; refers to the sufficiency thereof, the care of the child, and asks the petition be dismissed.

The defendant's amended petition to vacate decree, etc., filed November 6, 1953, alleges, in substance, that the plaintiff did not have a legal residence in Kane county, Illinois, in accordance with the statutes, the court did not have jurisdiction of the parties, and the plaintiff testified falsely as to the sworn allegations of the complaint.

At the original divorce hearing, the plaintiff testified, substantially, that she resided at 164 Harding street, Elgin, Kane county, Illinois, had resided in Elgin all her life; was married to defendant, they had one adopted child, afflicted presently with polio; did not get along well with defendant, they were not then living together; defendant deserted her March 15, 1950, they had not lived together as husband and wife since then, such was not because of her conduct, she's tried to make a happy home, but it was not, through no fault of hers; defendant is a chaplain in the Navy, referred to his earnings, they had discussed a property settlement and such had been arranged to her satisfaction; defendant had agreed on certain support for her and the child, and she requests custody. The plaintiff's mother, Lillian R. Strohm, also testified, substantially, that she has frequently visited in plaintiff and defendant's home, observed them, they have not to her knowledge lived together as husband and wife since March 15, 1950, and defendant's treatment of plaintiff was not good. Defendant was evidently not personally present at the hearing, nor was there any attorney for him, there was no cross-examination of plaintiff's witnesses, and no evidence presented for defendant.

At the hearing on the defendant's petition, etc., to vacate decree, etc., the defendant's evidence consisted of the defendant's testimony by deposition; the plaintiff's evidence was the testimony of Charles Lowry,

338

county clerk of Kane county, Illinois, certain files and records of the county court of that county in the adoption case relating to plaintiff and defendant's child, and certain files and records of the clerk as to the voter's registrations of plaintiff and defendant. Plaintiff did not testify at the hearing.

The defendant's deposition on behalf of his verified petition, as amended, is lengthy and we'll summarize only certain essentials thereof. He says he is a chaplain, U. S. Navy, Great Lakes, Illinois, was so on June 8, 1951, being then attached to the same command though in a different billet; there was never any separation between plaintiff and defendant, except as defendant's duties at sea required; on March 15, 1950 he was at sea, plaintiff was in their apartment at Flushing, N. Y., he arrived at Brooklyn March 22, 1950, and he remained with her continuously thereafter until March 30, 1951, when his duties took him to Parris Island, S. C. A week or two after April 1, 1951 he obtained an apartment at Parris Island, he telephoned plaintiff in New York, she said she would not come down, not live with him, and requested transportation arrangements for her and the child to Elgin, Illinois; she was in New York until April 27, when she, the child, and the household effects were removed to 164 Harding street, Elgin, Illinois, an apartment she rented. He next saw her there May 3 or 4, 1951, he then being en route in his duties to Great Lakes, Illinois, he asked what was wrong, she gave no answer, she refused to let him stay at the apartment, he stayed at the YMCA, Elgin. The first conversation about divorce was early in May 1951, when she "tricked" him into coming to her Elgin attorney's office, defendant having on an off-duty day been riding with plaintiff and the child in their car, she driving, she having said she had some business to transact downtown and had to obtain a city license sticker for the car, and she picked up her mother on the way downtown. They all went on the elevator of a building up

to her attorney's office, he did not leave the elevator and went back down again, she accompanying him; her attorney and mother conversed with him on the first floor of the building, the attorney saying "It certainly won't hurt, come up to my office and talk things over," so defendant went up "to see what was going on." It was there made known to him she was suing him for divorce, he protested about property settlements, support, and maintenance, he thought she was mentally unstable, he was heartbroken and crushed, he said he did not want a divorce, he plead with her, she was adamant. He demanded certain life insurance policies on his life and some U. S. war bonds her attorney evidently had at the office; the conference there was long, he protested against divorce, he was without funds, he needed a car, he feared coming into court, he felt divorce would damage his position as a chaplain and minister, he was emotionally ill, frightened, crushed. He agreed to let them sue him for divorce and to make some financial settlement. No papers were submitted to him to sign on that day. He saw her about every week thereafter, asked her to live with him, she declined. A week after the first meeting at her attorney's office she and he again went to the attorney's office, a "paper" was then signed, there was further discussion about support payments, a "financial agreement" was signed then or at the first meeting at the attorney's office. He was not at the attorney's office June 8, 1951, he had signed the appearance, he had signed the answer, he read the documents, they did not mean too much to him, he did not see how a court could grant a divorce since she had no justifiable grounds, and he denied "the allegations." He signed the appearance under pressure of grief, bewilderment, fear of his career being at stake, and thought she was mentally and emotionally ill, and hoped they could re-establish their home, by his not appearing in court and not making a battle of great

proportions. He knew the documents he executed were to be used by plaintiff in furtherance of her proposed divorce action. During one of the conferences at her attorney's office defendant asked that the "petition be placed in his name rather than hers." After a financial agreement was executed by him he obtained back his insurance policies shortly before June 8, 1951. He learned a divorce had been granted her the next day after it occurred, by a telephone talk with plaintiff. After the divorce he received a copy of "her petition and a copy of the Court decree," he was shocked and incensed, her statements were false, her mother's statements as to desertion were false. He is and has been paying plaintiff $225 per month, $125 for child support, $100 for her support. Plaintiff now is at Emory University, Georgia, with the child. Defendant testified extensively about plaintiff's alleged conduct while married, plaintiff's alleged cruelty on several occasions, and plaintiff's alleged misconduct on several occasions. After they were married in 1937, they lived for awhile with her parents, evidently in Elgin, Illinois, then at Wheaton, Illinois, while he and she completed college, then with her parents in Elgin, then Dallas, Texas while he was at Theological Seminary until 1940, then at another seminary in Chicago, then in May 1943 he entered the Navy, and thereafter he was at various places as duties required, either in this country or aboard ship. The child stayed with him a few days at Christmas 1952. Defendant is now engaged to marry a naval nurse. He was to leave Great Lakes July 3, 1953 for sea duty. While defendant's petition was pending he telephoned plaintiff and told her unless she accepted $99.50 a month he might have to resign from the Navy and possibly she might not then receive anything. After the divorce plaintiff gave defendant a statement of some kind for Navy purposes so that anything in the divorce case would not jeopardize his position, which statement defendant has and has not yet had to use.

341

On behalf of the plaintiff at the hearing on defendant's petition the county clerk identified the plaintiff and defendant's verified petition of July 3, 1947 in the county court of Kane county for adoption of their child, which alleged among other things that plaintiff and defendant were residents of Kane county, Illinois, at 386 East Chicago street, Elgin; and also identified plaintiff's and defendant's voter's registration cards, which indicate defendant's verified registration as of July 8, 1950 at 386 East Chicago, Elgin, Illinois, the term of residence stated being 1943 to date, and that at the time of the next election he would have resided in Illinois one year and the county 90 days, etc., and which indicate plaintiff's registration as of October 10, 1944 at 386 East Chicago, Elgin, Illinois, the term being from 1943 to date, and a transfer in 1951 to a new address, 164 Harding, Elgin.

Chapter 77, Ill. Rev. Stats. 1953, pars. 82 and 84 [Jones Ill. Stats. Ann. 104.099, 104.101], provide that:

82. "Hereafter every judgment, decree or order, final in its nature, of any court of record in any civil or criminal proceeding shall have the same force and effect as a conclusive adjudication upon the expiration of thirty days from the date of its rendition as, under the law heretofore in force, it has had upon the expiration of the term of court at which it was rendered."

84. "Any such judgment, decree or order may hereafter be modified, set aside or vacated after the expiration of such thirty days in the same cases, to the same extent and by the same modes of proceeding as, under the law heretofore in force, it might have been modified, set aside or vacated after the expiration of the term of court at which it was rendered."

Chapter 110, Ill. Rev. Stats. 1953, par. 196 [Jones Ill. Stats. Ann. 104.072], provides that:

"The writ of error coram nobis is hereby abolished, and all errors in fact, committed in the proceedings of

any court of record, and which, by the common law, could have been corrected by said writ, may be corrected by the court in which the error was committed, upon motion in writing, made at any time within five years after the rendition of final judgment in the case, upon reasonable notice. When the person entitled to make such motion shall be an infant, non compos mentis or under duress, at the time of passing judgment, the time of such disability shall be excluded from the computation of said five years."

The common-law writ of error coram nobis, and now the substitute statutory motion in writing (in the nature of a writ of error coram nobis) under the Civil Practice Act, ch. 110, Ill. Rev. Stats. 1953, par. 196 (as well as the identical statutory motion under section 89 of the Practice Act of 1907) applies only to an action at law and to a judgment at law, and does not apply to an action in chancery and to a decree in chancery: Tosetti Brewing Co. v. Koehler (1902), 200 Ill. 369; Frank v. Salomon et al. (1941), 376 Ill. 439; Pedersen et al. v. Logan Square etc. Bank et al. (1941), 377 Ill. 408.

Accordingly, the defendant's pending "petition in the nature of a writ of error, coram nobis, to vacate and set aside decree for divorce etc.," being filed in a chancery action and seeking to vacate and set aside a decree in chancery, is not authorized or permitted under paragraph 196, above, of the Civil Practice Act, would not have been proper as a writ of error coram nobis under the common law, is not an appropriate pleading upon which the court could, in any event, have vacated the decree of divorce of June 8, 1951, is itself beyond the jurisdiction of the court, and hence, for this, as well as other reasons hereinafter stated, the court was clearly correct in denying and dismissing the defendant's petition.

The decree of divorce of June 8, 1951 is a decree, final in its nature, of a court of record, in a civil

343

proceeding, and it has the same force and effect as a conclusive adjudication after 30 days from its rendition as under the law prior to the Civil Practice Act of 1933 it had after the term of court at which it was rendered. It may be set aside or vacated after such 30 days only in the same cases, to the same extent, and by the same modes of proceeding as under the law prior to the Civil Practice Act it might have been so set aside or vacated after the term of court at which it was rendered.

 The defendant's present petition, etc. to vacate and set aside the decree of June 8, 1951, filed after 30 days from the rendition of the decree, in fact filed March 13, 1953, more than 21 months after the decree, is a collateral attack on the decree. In case of a collateral attack on a decree of a court of record, a court of general jurisdiction, all presumptions are in favor of the validity of the decree; when acting within the scope of its authority it is presumed to have jurisdiction to enter the decree until the contrary appears; nothing is presumed to be without its jurisdiction which does not specially appear to be so; want of jurisdiction to enter the same must affirmatively appear on the face of the record to furnish a basis for collateral attack; it can be attacked collaterally only by the record itself, such cannot be shown aliunde the record, its records import verity, and the "record" consists only of the pleadings, process, verdict, judgment or decree, and does not include the evidence, certificate of evidence, or bill of exceptions: Prewitt et al. v. Prewitt (1947), 397 Ill. 178; Parsons v. Lurie et al. (1948), 400 Ill. 498; Knowlton v. Knowlton (1895), 155 Ill. 158; Jeffries v. Alexander et al. (1914), 266 Ill. 49; Grimm v. Grimm (1922), 302 Ill. 511; Cullen v. Stevens et al. (1944), 389 Ill. 35; Steffens v. Steffens (1951), 408 Ill. 150.

The record here, for this purpose, consists of the complaint of the plaintiff in the divorce case, the appearance of the defendant, the answer of the defendant, and the decree.

In Grimm v. Grimm, supra, the court held that a defendant in a divorce case could not collaterally attack the decree for divorce for alleged want of jurisdiction of the subject matter on account of the alleged invalidity of the marriage, and said, pp. 513–514:

"The Circuit Court is a court of general jurisdiction and has jurisdiction of the subject of divorce. The general rule is that judgments and decrees of such courts are not subject to collateral attack for want of jurisdiction unless it appears from the record itself that the court was without jurisdiction to render the judgment or decree. (Matthews v. Hoff, 113 Ill. 90; 15 R.C.L., Sec. 358, p. 880; Allen v. Huntington, 16 Am. Dec. 702; William v. Haynes, 19 A.S.R. 752.) The matter here relied on as rendering the decree void for want of jurisdiction does not appear from an inspection of the record. Indeed, by his answer defendant himself admitted the validity of the marriage and the jurisdiction of the court to render the decree. If the matter now relied on is true, it was within the knowledge of defendant and he deliberately perpetrated a fraud on the court by concealing it. He cannot now be permitted to raise a question of the court's jurisdiction of the subject matter because he desires to avoid complying with the decree. He had the opportunity to present the question in the divorce proceeding he now raises, and in addition to the general rule above referred to is estopped to set up that matter in a collateral attack. (Morrill v. Morrill, 23 A.S.R. 95.) In the Morrill case the Oregon Supreme Court aptly said: 'There must be an end to litigation, and where a party has an opportunity to present his defense and neglects to do so, the demands of the law require that he should take the consequences when the judgment or decree is sought to be enforced against him in a collateral proceeding.' Grimm also acquiesced in the decree and recognized its validity by paying part of the alimony he was ordered to pay. According to his own statement he has again married

since the divorce decree was entered, but he waited a year after that decree was rendered before marrying again. He is now estopped in this proceeding to deny the jurisdiction of the court to render the decree. Denver City Irrigation and Water Co. v. Middaugh, 13 A.S.R. 234; Greene v. Greene, 61 Am. Dec. 454, and note on p. 465."

In Jeffries v. Alexander et al., supra, the court held that a divorce decree could not be collaterally attacked for alleged want of jurisdiction of the subject matter on account of its not containing a finding at all that the plaintiff therein was a resident of the county, since it did not affirmatively appear from the record that plaintiff was not such a resident, and said, p. 53:

"The decree of divorce was rendered by the Circuit Court of Marion County, and it is contended that it was void because it contained no finding that the complainant was a resident of that county. That the decree was for that reason erroneous and might have been reversed is established by the case of Becklenberg v. Becklenberg, 232 Ill. 129. But it does not therefore follow that it was void and could be wholly disregarded. The argument made against it is, that the decree failing to show on its face that the court had jurisdiction of the subject matter was therefore absolutely void and subject to collateral attack. The Circuit Courts of this State have jurisdiction of the subject matter of divorce, and, being courts of general jurisdiction, every presumption will be indulged in favor of their decrees. Nothing will be presumed to be without their jurisdiction which does not specially appear to be so. The court having general jurisdiction of the subject matter will be presumed to have jurisdiction of the particular cause unless its want of jurisdiction affirmatively appears. In the decree in question want of jurisdiction does not affirmatively appear. Though it does not appear that the complainant was a resident of Marion County it does not affirma-

346

tively appear that she was not, and the court having rendered a decree, it will be presumed, as against a collateral attack, that the particular cause was within its jurisdiction."

In Cullen v. Stevens et al., supra, the court held that a divorce decree could not be collaterally attacked for alleged want of jurisdiction of the subject matter on account of the plaintiff therein being, allegedly, from the evidence on the divorce hearing, not a resident of the city or county where the decree was entered, there being nothing in the record to indicate lack of jurisdiction, the decree having found jurisdiction, and the evidence and certificate of evidence not being a part of the "record," the "record" consisting only of the pleadings, process, verdict (if there be a jury), and judgment or decree, and said, pp. 37–38, 42, 42–43:

"That the plaintiff shall reside in the county where the suit is filed, is a prerequisite to the filing of a complaint in a divorce proceeding. (Dean v. Dean, 381 Ill. 514.) A city court is a court of general jurisdiction within the limits of the city where located. It has jurisdiction to hear and determine divorce cases. Its records import verity and, in the absence of proof from its records, its decrees cannot be attacked collaterally, as its jurisdiction will be presumed. (People ex rel. Stuckart v. Culver, 281 Ill. 401; Forrest v. Fey, 218 Ill. 165.) In case of collateral attack all presumptions are in favor of the validity of the judgment or decree attacked and want of jurisdiction to enter the same must appear on the face of the record in order to furnish a basis for collateral attack. Such can not be shown aliunde. People v. Culver, 281 Ill. 401; People ex rel. McCall v. Martin, 243 Ill. 284; Thompson v. People ex rel. Hanberg, 207 Ill. 334.

". . .

"From a consideration of these various cases, the definition of 'record,' 'record proper,' or 'complete record,'

347

to be deduced, is that the record shall consist of pleadings, process, verdict of the jury and judgment or decree of the court. This must, necessarily, be the limitations of a record if there be stability in decrees and judgments of the court. To include the certificate of evidence as a part of the record would involve opening many questions and the production of many lawsuits. There could be no certainty in decrees. A re-examination of the evidence upon collateral attack would result in far-reaching consequences, involving, among other things, the disturbing of titles long considered settled as well as weakening the jurisdictional presumption that has always obtained.

". . .

". . . The city court of Calumet City being a court of general jurisdiction within the limits of that city, its decree is entitled to the benefit of the presumption that the court had jurisdiction to render it until the contrary appears from the record. (Horn v. Horn, 234 Ill. 268.) There is nothing in the record of the city court of Calumet City to indicate that it did not have jurisdiction of the divorce proceeding. The court found jurisdiction in its decree. It follows that its decree in that cause is not open to collateral attack and the Circuit Court in this case did not err in sustaining the motion to dismiss. Its decree dismissing the complaint is affirmed."

In Steffens v. Steffens, supra, a decree of divorce was entered on the plaintiff husband's complaint on July 9, 1946; the complaint alleged residence in the county for more than a year; defendant filed a written appearance, by counsel; she also filed an answer; she was not personally present, or her attorneys, at the hearing; evidence was presented as to plaintiff's residence, etc.; the decree found jurisdiction, residence of the plaintiff, etc.; on May 7, 1948, about 22 months after the decree, defendant filed a petition to vacate the decree, alleging

plaintiff had not been a resident, etc., of the county, she was not guilty of any grounds for divorce, and plaintiff's allegations and evidence were false, fraudulent, and perjured. Plaintiff's motion to strike the petition was allowed, the Appellate Court affirmed, and the Supreme Court affirmed. The court said, pp. 153, 154–155:

"This Court has announced in many cases that in case of a collateral attack on a judgment or decree all presumptions are in favor of the validity of the judgment or decree attacked, and want of jurisdiction to enter the same must appear on the face of the record to furnish the basis for such attack. Prewitt v. Prewitt, 397 Ill. 178; Parsons v. Lurie, 400 Ill. 498; Cullen v. Stevens, 389 Ill. 35.

". . .

"Howard v. Howard, 304 Ill. App. 637, involved a forged entry of appearance, the effect being that the defendant had never been served with notice of any kind and never afforded any opportunity for a hearing. Such cases and that character of fraud form an exception to the general rule, and evidence *dehors* the record on collateral attack may be shown. Cases where the fraud practiced on a party goes to the jurisdiction of the court or where the defendant was prevented from appearing, or from presenting any defense, without fault or negligence on his part, are clearly distinguishable from the facts in this case. We feel that the language of the Supreme Court of the United States in Sherrer v. Sherrer, 334 U. S. 343, indicates the settled policy of the law to be in accord with the rules adopted by this court. In the Sherrer case, at page 348, it was stated: 'It is clear that respondent was afforded his day in court with respect to every issue involved in the litigation, including the jurisdictional issue of petitioner's domicile. Under such circumstances, there is nothing in the concept of due process which demands that a defendant be afforded a second opportunity to

349

litigate the existence of jurisdictional facts. Chicago Life Insurance Co. v. Cherry, 244 U. S. 25 (1917); Baldwin v. Iowa Traveling Men's Ass'n, 283 U. S. 522 (1931).'

"Here the question of the appellee's residence was a question of fact raised by his complaint. The appellant was properly served by publication and submitted herself to the jurisdiction of the court through her own chosen attorneys. She was given notice and had a right to present proofs upon that issue of fact. She was not present at the hearing, but that was not because of any fraud on the part of appellee. He was guilty of no fraud that deprived her of an opportunity to be heard on all the issues of fact in the case. The testimony was introduced, including evidence of appellee's residence; the court determined the evidence and entered a decree of divorce accordingly. Nearly two years expired before this petition to vacate the decree was filed. The decree was valid on the face of the record.

"We believe the well-settled law of the State of Illinois as herein stated is in the interest of the stability and permanency of not only divorce decrees but of the rights of property and other important rights of citizens dependent upon decrees of courts of general jurisdiction."

 All presumptions are in favor of the validity of the decree of June 8, 1951. Divorce is a subject matter within the court's scope of authority and it is presumed to have jurisdiction to enter the decree until the contrary appears. Nothing to the contrary so appears here. The decree is presumed to be within its jurisdiction unless it specially appears not to be so. It does not specially appear here to not be so. Want of jurisdiction does not affirmatively appear on the record, meaning the pleadings, process, and decree. In fact, jurisdiction affirmatively appears from the record. The decree cannot be collaterally attacked on defendant's

350

petition for alleged matters aliunde, dehors, and beyond the record.

Furthermore, although the evidence and certificate of evidence at the divorce hearing are not a part of the "record" proper for this purpose, we may also observe that that evidence amply sustains the record.

██ ██ The alleged matters as to the plaintiff's or defendant's alleged residences referred to in defendant's present petition were, if true, obviously within the knowledge of the defendant at the time of the divorce and, if true, he misled the plaintiff and the court by concealing the same. He had every opportunity to present in the divorce case the questions he now raises for the first time by petition to vacate about 21 months after the decree. He, in fact, made an issue of residency by his answer, the court heard evidence thereon, and determined the issue. He saw fit not to appear at the hearing, cross-examine plaintiff's witnesses, or offer evidence. Why is not explained. He was not prevented from doing so. He evidently acquiesced in the decree and recognized its validity by paying regularly the alimony and child support required thereby, and by becoming engaged to marry someone else. He is barred from now collaterally attacking the decree on this petition upon the additional principles of estoppel and res judicata. The evidence cannot be re-examined upon collateral attack.

As to the alleged "fraud, perjury, and deceit" referred to in defendant's present petition, considering the record and all the evidence at the original divorce hearing and all the evidence at the hearing on this petition, there was no "fraud" practiced on defendant or the court going to the jurisdiction of the court. Defendant was not prevented from appearing, or from presenting any alleged defense.

He is not without fault or negligence in his conduct in connection with the original divorce and subsequent-

ly. At the first lengthy conference early in May 1951, at her attorney's office, Elgin, if not before, which he voluntarily attended, he became quite aware plaintiff was suing him for divorce, property settlements, support and maintenance were all discussed, but evidently nothing was signed then, and he agreed to let her so sue and to make some financial settlement. He voluntarily attended a second conference there about a week later at which evidently the appearance, answer, etc., were executed. He thought a court would not grant her a divorce because of insufficient grounds and he denied the "allegations" (presumably having seen, or at least meaning and referring to, the allegations in a copy of the complaint). He hoped by not appearing in court and making a battle, they could re-establish their home. At one point he even asked the proceedings be taken in his name instead of hers. He signed the appearance, he signed the answer, he knew they were to be used in furtherance of her divorce action. That he was not present at the divorce hearing was not because of any "fraud" on the part of the plaintiff; there was no "fraud" by plaintiff that deprived defendant of an opportunity to be heard on all issues.

He knew the divorce had been granted at least by the next day after it occurred; he, at least, received after the divorce a copy of the complaint and decree, and he felt then that plaintiff's allegations were false; he has evidently regularly paid the alimony and child support ordered by the decree for about 2 years since its entry; most of defendant's alleged knowledge as to plaintiff's alleged conduct, alleged cruelty, and alleged misconduct he had at the time of and long prior to the divorce; he's evidently been at Great Lakes, Illinois, not too far from Elgin, ever since the divorce decree and until July 3, 1953. Notwithstanding that, defendant evidently sat idly by, sleeping on his alleged claims, for 21 months before filing the present petition.

 He had a day in court, an opportunity to be heard, on all issues including the jurisdictional issue of plaintiff's or his residence and nothing demands defendant be afforded a second opportunity to litigate jurisdictional or other facts. That, if true, defendant at the conferences preceding the divorce was heartbroken, crushed, did not want a divorce, feared coming into court, felt it would damage his position as a chaplain and minister, was "emotionally ill," frightened, grieved, and bewildered, does not, under the circumstances, show "fraud" practiced by the plaintiff going to the jurisdiction of the court, preventing him from appearing, or preventing him from presenting any alleged defense, or "duress and undue influence" by the plaintiff upon the defendant.

 Even if the substitute statutory motion in writing (in the nature of a writ of error coram nobis) under ch. 110, Ill. Rev. Stats. 1953, par. 196, were applicable, in a proper case, to an action in chancery and a decree in chancery, which it is not, the motion normally is available only to raise alleged errors in fact not appearing of record, affecting the validity of and which would preclude the rendition of the decision and unknown to the court at the time and not inconsistent with the record, such as misprision of the clerk, infancy of a party, coverture (formerly), death of a party, insanity of a party, excusable mistakes, duress, or fraud going to the jurisdiction and which prevents a party from appearing or making a defense, without negligence on the part of the party against whom the decision was rendered, and it does not go into alleged error involving the merits of the case. It does not permit going into matters of law or into alleged facts appearing on the face of the record, or contradicting the finding of the court, or putting in issue a fact that has been adjudicated in the action or which arose on the original pleadings. It is never intended to relieve

353

a party of the consequences of his own negligence. It does not lie merely to go into alleged false testimony at the original hearing, otherwise there would never be an end to litigation: Tosetti Brewing Co. v. Koehler, supra; Chapman v. North American Life Ins. Co. (1920), 292 Ill. 179; People v. Ogbin (1938), 368 Ill. 173; Linehan v. Travelers Ins. Co. (1938), 370 Ill. 157; People v. Thon (1940), 374 Ill. 624; Bishopp v. Risser (1948), 334 Ill. App. 522; In re Estate of August Luer, Deceased (1952), 348 Ill. App. 324.

Hence, here, if the substitute statutory motion in writing (in the nature of a writ of error coram nobis) were otherwise available it is not here applicable because the matters defendant seeks to raise and go into appear of record, his alleged facts are inconsistent with the record, contradict the finding of the court, attempt to put in issue a fact that has been adjudicated and arose on the original pleadings, they do not fall within any of the normal categories of use of the writ or motion, do not constitute excusable mistake, duress, or fraud going to the jurisdiction and preventing him from appearing or making a defense, amount to alleging the testimony at the original hearing was false, and he is not without negligence.

That the defendant's present petition includes a prayer not only to vacate the decree but affirmatively for leave to him to file a counterclaim for divorce and for the custody of the child (which counterclaim would also have to be based on residency of the plaintiff or defendant for some period in Kane county, Illinois), and that the defendant's allegations as to lack of proper residence by the plaintiff were not directly and positively stated in his original petition of March 13, 1953 nor until his amended petition of November 6, 1953 (2 years and 5 months, about, after the decree), and that during the pendency of the petition defendant asked plaintiff to accept a reduction in the support pay-

ments, are additional factors casting some further doubt on the substantive merit of defendant's position in that respect.

The order of the trial court of January 8, 1954 denying and dismissing the defendant's petition is affirmed.

Order affirmed.

DOVE, J., concurs in the affirmance of this order.